UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JAMES PAUL AERY,<br><br>Plaintiff,<br><br>v.<br><br>NICK LEWIS and KYLE BECKWITH,<br><br>Defendants. | Case No. 22-CV-00012 (KMM/JFD)<br><br><br>**REPORT AND RECOMMENDATION** |

This case is before the Court on Defendants Nick Lewis and Kyle Beckwith's Motion for Summary Judgment (Dkt. No. 50), filed pursuant to Federal Rule of Civil Procedure 56. This case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

Plaintiff James Paul Aery is suing Defendants Nick Lewis and Kyle Beckwith, both of whom are Beltrami County Deputy Sheriffs, in their individual and official capacities for alleged violations of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983. Mr. Aery also brings state law claims of assault and intentional infliction of emotional distress. Specifically, Mr. Aery alleges that Deputy Lewis violated his Fourteenth Amendment due process rights, intentionally inflicted emotional distress, and assaulted him; and that Deputy Beckwith assaulted him and violated his Fourth Amendment rights by using excessive force. (Am. Compl. at 4–8, Dkt. No. 13.) Defendants seek summary

1

judgment on all claims. (Defs.' Mem. Supp. Summ. J. at 1, Dkt. No. 52.) Mr. Aery did not file a response to the summary judgment motion.[1] Because there is no genuine dispute of material fact and Defendants are entitled to judgment as a matter of law, the undersigned recommends that summary judgment be granted on the federal law claims. The undersigned further recommends that the state law claims be dismissed without prejudice for lack of supplemental jurisdiction.

I.   **Relevant Facts**

On December 3, 2000, a citizen reported two individuals passed out in a car parked at the Turtle River Lake boat landing. (Ebert Aff. Ex. 1 at 4, Dkt. No. 53-1.) Deputy Lewis and Sergeant Robert Carlson responded and recognized the driver as Mr. Aery, with whom

---

[1] Defendants filed the summary judgment motion on February 24, 2023. The Court issued a briefing order three days later, setting March 23, 2023 as the deadline for Mr. Aery's response. (Dkt. No. 57.) Mr. Aery did not file a response or otherwise communicate with the Court until he filed a Notice of Change of Address and Request for Update in Status of Active Cases on May 22, 2023. (Dkt. No. 58.) On June 5, 2023, Mr. Aery filed a document titled "Notice of Difficulties" and requesting a "reasonable time to reply." (Dkt. No. 59.) This request is denied. First, Mr. Aery has not complied with D. Minn. LR 7.1(b), which governs civil motion practice, including motions for an extension of time. Second, Mr. Aery does not describe the "mail and electronic problems" that supposedly impeded his ability to meet the March 23, 2023 deadline. Therefore, the Court does not find good cause to extend the deadline. *See* Fed. R. Civ. P. 6(b)(1).

Additionally, the Court is aware from another case filed by Mr. Aery and assigned to this Court that the Minnesota Department of Corrections' Offender Locator website provided Mr. Aery's status as "Wanted Fugitive" between November 23, 2022 and at least January 30, 2023. *Aery v. Mend*, No. 21-cv-2422 (PJS/JFD), slip op. at 2 n.1 (D. Minn. Jan. 31, 2023); *see also Aery v. Beitel*, No. 22-cv-114 (KMM/TNL), 2023 WL 2838132, at *11 (D. Minn. Jan. 13, 2023) ("Publicly available information from the Minnesota Department of Corrections' offender-locator website indicates that Plaintiff is a wanted fugitive as of November 2022."), *R. & R. adopted*, 2023 WL 2675147 (D. Minn. Mar. 29, 2023). To the extent Mr. Aery's fugitive status created "difficulties" or "mail and electronic problems," that does not constitute good cause either.

they were familiar. (*Id.*) The officers confirmed that Mr. Aery did not have a valid driver's license but did have an outstanding warrant. (*Id.* at 4–5.) When Mr. Aery stepped out of the car at the officers' request, he threw a meth pipe toward the boat landing, which the officers recovered. (*Id.* at 5.) During a field interview, Mr. Aery showed signs of impairment and spoke aggressively, and he refused field sobriety testing. (*Id.*) Mr. Aery was arrested on the outstanding warrant and for driving after revocation of his driver's license, obstructing legal process, and driving while impaired. (*Id.* at 7.) Officers found hypodermic needles and a handheld torch when they searched his car. (*Id.*) Deputy Lewis transported Mr. Aery after his arrest to the Beltrami County Jail. (*Id.*) Mr. Aery acted erratically and talked to himself, which Deputy Lewis believed were signs of intoxication. (*Id.*)

At the jail, Deputy Lewis obtained a search warrant for a blood or urine sample from Mr. Aery. (*Id.*) Deputy Lewis informed Mr. Aery that he had a search warrant for a blood or urine sample and that refusing to provide a sample was a crime. (*Id.*) After Deputy Lewis described the process, Mr. Aery said he needed some time but made no effort to provide a sample. (*Id.*) Mr. Aery was "uncooperative," "erratic," and "boisterous," and he pulled down his pants to show the officers his genitals. (*Id.* at 8.) Deputy Lewis informed Mr. Aery that he was refusing to provide a sample. (*Id.*) Deputy Lewis attempted to retrieve the sample container from the sink in Mr. Aery's holding cell, but Mr. Aery ran toward the door of his cell and tried to block him. (*Id.*) Deputy Beckwith ordered Mr. Aery to get back in his cell, and Mr. Aery resisted with physical force against Deputy Beckwith and other deputies. (*Id.*) Deputy Beckwith grabbed Mr. Aery's arm, and several deputies pushed him

back into the cell and on to a bunk. (*Id.* at 9.) Mr. Aery continued to resist and try to escape the cell, and Deputy Beckwith pushed him back into the cell several times. (*Id.*) Mr. Aery was eventually placed in handcuffs. (*Id.* at 7.) No one appeared to be injured. (*Id.*)

## II. Standard on Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of a factual dispute will not overcome a properly supported motion for summary judgment if there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is material for the purposes of summary judgment if it will affect the outcome of the suit under the governing law. *Id.* at 248; *Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1048 (8th Cir. 2022). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *Erickson*, 31 F.4th at 1048 (quoting *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 948 (8th Cir. 2012)). A reviewing court considers inferences drawn from the facts in the light most favorable to the non-moving party. *United States v. Diebold Inc.*, 369 U.S. 654, 655 (1962) (per curiam); *Walsh v. Alpha & Omega USA, Inc.*, 39 F.4th 1078, 1082 (8th Cir. 2022).

## III. Analysis

### A. Official Capacity Claims

"A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006). Therefore, Mr. Aery's official capacity claims are treated as claims against

Beltrami County. "In general, 'a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents' on a respondeat superior theory of liability." *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). A county "may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional municipal policy or custom." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). To establish *Monell* liability for a policy or custom, "a plaintiff must prove that a municipal policy or custom was the moving force behind the constitutional violation." *Id.* (cleaned up). "A 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Id.* A custom, on the other hand, must meet the following three requirements:

(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) The plaintiff's injury by acts pursuant to the governmental entity's custom, *i.e.*, proof that the custom was the moving force behind the constitutional violation.

*Id.* (cleaned up). A county may also be liable under *Monell* for "a deliberately indifferent failure to train or supervise" its officials or employees. *Corwin v. City of Indep., Mo.*, 829 F.3d 695, 699 (8th Cir. 2016).

Here, Mr. Aery has provided no evidence whatsoever of a policy or custom (unconstitutional or otherwise), nor is there any evidence of a policy or custom in the record submitted by Defendants. There is also no evidence of a failure to train or supervise. Without such evidence, Beltrami County cannot be liable as a matter of law. Therefore, the Court recommends that summary judgment be granted to Defendants on Mr. Aery's official capacity claims.

### B. Individual Capacity Claims

#### 1. Due Process

Mr. Aery alleges that Deputy Lewis in his individual capacity violated Mr. Aery's Fourteenth Amendment rights. The Amended Complaint refers to "due process violations" generally. (Am. Compl. at 2.) Granting the pleading a liberal construction, the Court will briefly address both procedural and substantive due process.

To prevail on a procedural due process claim, "'a plaintiff, first, must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law.'" *Gordon v. Hansen*, 168 F.3d 1109, 1114 (8th Cir. 1999). Mr. Aery has not identified what liberty or property interest is purportedly at stake, nor has he provided any evidence in support of a procedural due process claim. The evidence provided by Defendants, however, shows that Deputy Lewis afforded Mr. Aery adequate process by providing a reasonable opportunity and amount of time to comply with the search warrant. This evidence includes Deputy Lewis's body camera footage, Deputy Beckwith's body camera footage, video footage from the Beltrami County Jail, and incident reports filed by officers who were involved in

the incident. (Ebert Aff. Exs. 3, 5, 6, 7.) Mr. Aery has not established that Deputy Lewis deprived him of a protected interest without due process of law.

To prevail on a substantive due process claim, Mr. Aery must provide evidence that a governmental officer infringed on a fundamental right in a way that was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). Mr. Aery has not identified any such evidence, nor does the evidence submitted by Defendants reveal shocking, egregious, or outrageous conduct. Consequently, the Court recommends that summary judgment be granted to Defendants on the Fourteenth Amendment due process claims.

### 2. Fourth Amendment

Mr. Aery alleges that Deputy Beckwith used excessive force against him and that, as a result, he now suffers from "PTSD, [a]nxiety, mood disorder, depression, panic attacks and ongoing pain and numbness and tingling in wrists." (Am. Compl. at 7–8.)

A claim arising from an incident that occurred shortly after an arrest is analyzed under the Fourth Amendment "reasonableness" framework. *Chambers v. Pennycook*, 641 F.3d 898, 905 (8th Cir. 2011). The reasonableness standard "is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), but depends on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Mr. Aery has not provided any evidence that would support his claim that Deputy Beckwith's conduct was unreasonable. On the other hand, Defendants have provided incident reports and body camera footage that shows the reasonableness of Deputy Beckwith's conduct. (*See* Ebert Aff. Exs. 3, 5, 7.) The video footage shows Mr. Aery lunging for the door to his cell, at which point several officers, including Deputy Beckwith, grab and subdue him. (*See* Ebert Aff. Exs. 3, 5.) Deputy Beckwith grabbed Mr. Aery's arm and held it down with reasonable force. (*See* Def. Exs. 3, 7.) The incident reports completed by Deputy Beckwith and Deputy Lewis are consistent with the video footage and document Mr. Aery's resistance to the deputies' commands and attempts to escape the cell. The Court finds that Deputy Beckwith's use of force was reasonable and recommends that he be granted summary judgment on Mr. Aery's Fourth Amendment claim.

### C. Qualified Immunity

Defendants argue that they are entitled to qualified immunity for the individual capacity claims. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For the reasons discussed above, Mr. Aery has not shown a violation of a constitutional right. Therefore, qualified immunity shields Deputy Lewis and Deputy Beckwith from liability for claims brought against them in their individual capacities.

### D. State Law Claims

Mr. Aery brings state law causes of action for assault and intentional infliction of emotional distress. (Am. Compl. at 4.) The Court lacks subject matter jurisdiction over these state law claims. Mr. Aery does not allege that the parties are of diverse citizenship, *see* 28 U.S.C. § 1332(a), and Mr. Aery's state-law claims do not present a question of federal law, *see* 28 U.S.C. § 1331. A federal district court lacking original subject matter jurisdiction over state law claims may exercise supplemental jurisdiction over those claims when a federal law claim also remains pending in the action, *see* 28 U.S.C. § 1367, but the Court should decline to exercise supplemental jurisdiction where, as recommended here, summary judgment is granted on all federal law claims prior to trial, *see Hervey v. Koochiching*, 527 F.3d 711, 726-27 (8th Cir. 2008); *see also* 28 U.S.C. § 1367(c)(3). Accordingly, the Court recommends that the state law claims brought by Mr. Aery be dismissed without prejudice.

## IV. Recommendation

Based on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendants Nick Lewis and Kyle Beckwith's Motion for Summary Judgment (Dkt. No. 50) be **GRANTED**;

2. Mr. Aery's Fourth and Fourteenth Amendment claims be **DISMISSED WITH PREJUDICE**;

3. Mr. Aery's state law claims of assault and intentional infliction of emotional distress be **DISMISSED WITHOUT PREJUDICE**, pursuant to 28 U.S.C. § 1367(c)(3); and

4. **JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: June 7, 2023               *s/ John F. Docherty*
                                  JOHN F. DOCHERTY
                                  United States Magistrate Judge

## NOTICE

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation within fourteen days. A party may respond to objections within fourteen days after being served a copy of the objections. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).