UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| James Paul Aery, | No. 22-cv-12 (KMM/JFD) |
| Plaintiff, | |
| v. | ORDER |
| Deputy Nick Lewis, individual and official capacity; Deputy Kyle Beckwith, individual and official capacity, | |
| Defendants. | |

The above matter comes before the Court for review of the Report and Recommendation (R&R) of United States Magistrate Judge John F. Docherty, dated June 7, 2023 [Dkt. 60], and the Plaintiff's Objection to the R&R [Objection, Dkt. 61]. In the R&R, Judge Docherty recommends (1) that Defendants' motion for summary judgment be granted, (2) that Plaintiff's claims under the Fourth and Fourteenth Amendments be dismissed with prejudice, and (3) that his state law claims of assault and intentional infliction of emotional distress be dismissed without prejudice, under 28 U.S.C. § 1367(c)(3). For the reasons that follow, the Court accepts the R&R, grants the Defendants' motion for summary judgment, and overrules the Plaintiff's Objection.

The Court reviews de novo any portion of the R&R to which specific objections are made. 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b). In the absence of objections, the Court reviews the R&R for clear error. *Nur v. Olmsted County*, 563 F. Supp. 3d 946, 949

(D. Minn. 2021) (citing Fed. R. Civ. P. 72(b) and *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam)).

## I. Background and R&R

Plaintiff James Paul Aery claims that Defendants Nick Lewis and Kyle Beckwith violated his constitutional rights and are liable for assault and intentional infliction of emotional distress ("IIED") under Minnesota law. His claims arise out of the Defendants' attempts to obtain a urine sample from Mr. Aery at the Beltrami County Jail following his arrest on an outstanding warrant and for suspicion of driving while impaired. The officers obtained a search warrant for a blood or urine sample from Mr. Aery based on their observations of his behavior and the presence of drug paraphernalia when they encountered him. In his Amended Complaint, Mr. Aery alleged that he was abruptly presented with a cup to provide a sample for urinalysis ("UA") and then Deputy Lewis deemed him to have refused to provide a sample after only a brief period and without offering to take a blood draw. Mr. Aery also alleges that he attempted to communicate to the Defendants and other officers in the Jail that he simply couldn't provide a sample because he did not have to go to the bathroom and tried to get the Defendants to agree to take a blood draw instead. According to Mr. Aery's allegations, the Defendants ignored his pleas to take a blood draw and lied about Mr. Aery's conduct, poked him in the chest to try and provoke reactions from him, and claimed that he was trying to escape his cell.

Defendants moved for summary judgment, supporting their motion with evidence including Deputies Lewis and Beckwith's body camera footage, video footage from the Beltrami County Jail, and incident reports filed by officers who were present during the

events relevant to Mr. Aery's claims. [Ebert Aff., Exs. 3, 5, 6, 7, Dkt. 53.] Mr. Aery did not respond to the motion by the deadline provided.[1]

The R&R recommends granting the Defendants' summary judgment motion. First, the R&R rejects Mr. Aery's official-capacity claims against Beltrami County because he failed to present any evidence of a policy or custom that was the moving force behind the alleged violations of his constitutional rights, and there was no evidence of a failure to train or supervise. [R&R at 5–6.] Second, the R&R finds that Mr. Aery's Fourteenth Amendment procedural due process claim against Deputy Lewis fail as a matter of law because Mr. Aery did not identify a protected liberty or property interest and the evidence submitted by Defendants shows that Deputy Lewis gave Mr. Aery a reasonable opportunity and amount of time to comply with the search warrant. [R&R at 6.] In addition, Mr. Aery's substantive due process claim fails because the evidence in the record did not show shocking, egregious, or outrageous conduct by the Defendants. [R&R at 7.] Third, the R&R concludes that Defendants are entitled to summary judgment on Mr. Aery's Fourth Amendment excessive-force claim because Mr. Aery provided no

---

[1] The R&R notes that Defendants' motion for summary judgment was filed on February 24, 2023, a briefing order set a March 23, 2023 deadline for filing a response, and Mr. Aery did not file anything by the March 23rd deadline. Although Mr. Aery later requested additional time to respond, the R&R denied that motion because Mr. Aery failed to establish good cause to make an untimely filing. The R&R found that Mr. Aery was a wanted fugitive from November 23, 2022, through January 30, 2023, and his fugitive status did not support a finding of good cause for an extension of time to file an opposition to the motion. [R&R at 2 n.1.] Mr. Aery does not challenge these findings in his Objection. Even if he had, the standard of review would be extremely deferential, and this Court would only overturn the Magistrate Judge's determination if it were clearly erroneous or contrary to law. *See Miller v. Nw. Airlines, Inc.*, No. 11-cv-2063 (SRN/AJB), 2013 WL 5425420, at *7 (D. Minn. Sept. 27, 2013) (applying the standard of review applicable to nondispositive orders to a magistrate judge's determination that untimely summary judgment response should not be considered). Here, Judge Docherty's conclusion that there was no good cause for an extension was neither clearly erroneous nor contrary to law.

evidence that Deputy Beckwith's conduct was unreasonable and the video evidence showed that the officers used only reasonable force in responding to Mr. Aery's behavior, including lunging for the door to his cell. Moreover, the R&R finds that the Defendants' incident reports are consistent with the video footage and document Mr. Aery's resistance to the deputies' commands and attempts to escape his cell. [R&R at 7–8.] Having found no genuine fact dispute on Mr. Aery's constitutional claims, the R&R concludes that Deputy Lewis and Deputy Beckwith were shielded from liability in their individual capacities by qualified immunity. [R&R at 8.] Finally, because the R&R determines that all of the federal claims should be dismissed, the R&R further recommends that the Court should decline to exercise supplemental jurisdiction over Mr. Aery's state law tort claims and those claims should be dismissed without prejudice pursuant to 28 U.S.C. § 1367. [R&R at 9.]

## II.   Discussion

Mr. Aery's Objection to the R&R was received by the Clerk of Court on June 26, 2023. In his Objection, Mr. Aery raises three main arguments. [Objection, Dkt. 61.] As discussed below, his objections are overruled.

### *Procedural Due Process*

First, Mr. Aery disagrees with the R&R's conclusion that the amount of time he was given to provide a UA sample was reasonable and adequate, and that despite having been given that opportunity, Mr. Aery made no effort to provide a urine sample. Mr. Aery states that the audio captured by the recordings in the record confirms he was genuinely attempting to provide the sample, but could not do so because he was "being

4

manhandled by several officers" and "choked by someone's hand on [his] throat and neck." Further, he suggests that the recorded evidence shows he asked to be allowed to provide a blood sample. [Objection at 1–2.] He insists that in the video, "[y]ou can see me with the cup in hand and other hand arranging myself to provide sample while attempting to ask for time but being spoken to instead of listened to by Lewis." [Objection at 3.]

Reasonably construed, Mr. Aery is asserting that the evidence (1) would allow a reasonable jury to find a procedural due process violation, and (2) does not establish that he refused to comply with the search warrant for a UA or blood sample. Because this is a procedural due process claim, the ultimate question is whether any deprivation of a protected liberty or property interest occurred "without due process of law—without adequate procedures." *Birkenholtz v. Sluyer*, 857 F.2d 1214, 1216 (8th Cir. 1988).

Implicit in Mr. Aery's argument are the assertions that (1) before Defendants could lawfully have deemed him to have refused to comply with the chemical test, he should have been given more time to provide a urine sample; and (2) if he was unable to urinate, he should have been allowed to give a blood sample before being deemed to have refused to provide a sample. The problem for Mr. Aery is that he has not identified any support for the proposition that when an officer is executing a search warrant authorizing him to obtain a urine or blood sample from the subject of the warrant, the Fourteenth Amendment demands the subject be given any particular amount of time to comply or the

5

option to provide either form of sample.[2] Moreover, even if there is a federal constitutional right to some additional procedural protection in this context, Defendants would be entitled qualified immunity here. There has been no showing that a right to more time to provide a urine sample or to choose to provide a blood sample instead was so clearly established at the time of the events giving rise to this litigation that the illegality of the Defendants' alleged conduct was "beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (explaining that in determining whether an officer violated a clearly established right, a court should identify a controlling case or a judicial consensus involving sufficiently similar facts that place the question beyond debate). Accordingly, Mr. Aery's first objection is overruled.

### *Excessive Force*

Second, Mr. Aery suggests that Defendants are not entitled to summary judgment on his excessive force claim because video evidence does not support the Defendants' assertion that he tried to escape his cell by lunging at the door. Again, Mr. Aery alludes to

---

[2] Under Minnesota law, in license-revocation proceedings under the state's implied-consent law, courts have rejected the proposition that "a finding of [test] refusal-by-conduct must include a finding concerning the amount of time allowed for providing a test sample." *Stevens v. Comm'r of Pub. Safety*, 850 N.W.2d 717, 722 (Minn. Ct. App. 2014). Moreover, they have found that "a driver's 'election of one of the alternative chemical tests ... presupposes the driver's ability to supply, within a reasonable time, a sample essential to that test'" such that "an officer need not 'await the driver's convenience of a different time or place.'" *Id.* (quoting *State Dep't of Highways v. Lauseng*, 183 N.W.2d 926, 927 (Minn. 1971)). Further, even if *state law* established a procedural right for a suspect to choose the manner of chemical testing in the implied-consent context, which it does not appear to do here, that would not necessarily mean that refusal to honor such a choice violated a *federal constitutional* right that can be vindicated in a § 1983 suit. *See Angeline v. City of Hoover*, Case No. 2:07-CV-0292-RDP, 2009 WL 10704138, at *33 (N.D. Ala. Mar. 30, 2009) (explaining that "the creation of a procedural due process claim by Alabama courts, under Alabama law, for deprivation of a right [to obtain independent testing following a negative breath test] created by an Alabama statute, does not mean that the same deprivation gives rise to a federal due process violation."), *rev'd on other grounds* 352 F. App'x 332 (11th Cir. 2009) (per curiam).

the video and argues that he could not have been attempting to escape his cell because he can he heard stating: "What about the Blood test!" [Objection at 3.]

These objections are overruled. Having reviewed all the video footage in the record, including the available audio of the incident captured by the bodycam recordings, the Court finds that Mr. Aery's characterization of the incident giving rise to his claims is flatly contradicted by the record and no reasonable jury could find in his favor on any of his constitutional claims. *Jackson v. Brooklyn Ctr.*, No. 21-CV-2072 (SRN/DJF), 2023 WL 2368032, at *5 (D. Minn. Mar. 6, 2023) ("In *Scott v. Harris*, 550 U.S. 372, 381 (2007), on review of a summary judgment ruling, the Supreme Court held that when one party's version of events is blatantly contradicted by the video record, courts must view the facts in the light depicted by the videotape.") (cleaned up).

Deputy Lewis' bodycam provides the most complete audio and visual account of the interaction leading to this litigation. [Ebert Decl., Ex. 3.] After being presented with the search warrant, Mr. Aery spent several minutes arguing with Deputy Lewis, protesting that he did not need to use the restroom, but did not once actually attempt to provide a urine sample. At one point Mr. Aery says he doesn't want to provide a urine sample and would rather not provide a blood sample either. [Ex. 3 at 6:40.] After nearly 10 minutes of arguing and without any effort to provide the sample, Deputy Lewis calmly says "Alright James," walks into the holding cell, grabs the cup for the sample he had provided to Mr. Aery, and exits the cell saying "we're done." As Deputy Lewis tries to close the door behind him, Mr. Aery rushes over to the cell door opening, wedging

himself between the closing door and the jamb and exits the cell.[3] When officers tell him to get back in the cell, he shouts "I'm trying to piss." [*Id.* at 10:00–10:20.] At that point, several officers intervene to prevent Mr. Aery from leaving the cell and Mr. Aery struggles with them. During the struggle, Mr. Aery can be heard shouting that he is trying to provide a urine sample and that the officers are trying to hurt him while he refuses their commands for him to give them his arms so he can be handcuffed. [*Id.* at 10:20–11:30.]

No reasonable jury could see this video evidence and find in Mr. Aery's favor on his excessive force claim. Even if Mr. Aery could testify that he wasn't attempting to escape, given his behavior throughout the interaction with Deputy Lewis, there is no genuine dispute that he was refusing to comply with the search warrant. Moreover, the video evidence demonstrates that when it became clear that he would no longer be able to engage Deputy Lewis in an argumentative exchange about the merits of the warrant and Deputy Lewis's compliance or non-compliance with the law in executing the search warrant, Mr. Aery rushed toward and momentarily through his cell door. Even if a successful escape in these circumstances was far-fetched (there were at least three to four officers immediately outside the cell door), it was reasonable for the officers to use the force that they did to restrain him, prevent him from exiting the cell, and pacify his

---

[3] The surveillance video from the hallway camera in the jail shows that Mr. Aery crosses the threshold of the cell door and enters the hallway space briefly before officers shove him back into the cell. [Ebert Decl., Ex. 5 at 0:20–0:24.]

physical resistance. The R&R correctly concluded that the officers involved, including Deputy Lewis and Deputy Beckwith, used reasonable force under the circumstances.

### *Failure to Train*

Third, Mr. Aery contends that the R&R's recommended disposition of his failure-to-train claim was inappropriate because "[f]ailure to train is self evident" given that the officers ignored his request for time to provide samples, ignored his complaints of being harmed, and misrepresentation of the events in their police reports. [Objection at 5.] This objection provides no basis to reject the R&R's finding conclusion that Mr. Aery's official-capacity claims against Beltrami County should be dismissed. A failure to train theory "is typically not viable in the absence of an underlying constitutional violation by the city employees." *Jackson v. Brooklyn Ctr.*, No. 21-CV-2072 (SRN/DJF), 2023 WL 2368032, at *19 (D. Minn. Mar. 6, 2023) (citing *Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010) ("[W]e have consistently held that a municipality cannot be liable under § 1983 unless one of its employees is found liable.")). Having found no underlying violation, Mr. Aery cannot establish liability against the County based on a failure to train its officers.

### *State Claims*

Finally, Mr. Aery contends that his state law claims should be allowed to go forward as well "once review of [his] case is completed and a more thorough understanding of [the] incident" is obtained. [Objection at 4.] This objection is overruled. To the extent Mr. Aery suggests that the R&R was insufficiently thorough, his criticism ignores the R&R's clear references to and accurate descriptions of the entire record of

substantive evidence submitted in connection with the Defendants' summary judgment motion. More importantly, having concluded that the R&R correctly rejected Mr. Aery's constitutional claims, the Court further agrees with the R&R that supplemental jurisdiction should not be exercised over the state law claims under 28 U.S.C. § 1367(c)(3). Mr. Aery presents no argument why jurisdiction over those claims should be retained.

### III.   ORDER

Based on the discussion above, IT IS HEREBY ORDERED that:

1. The R&R [Dkt. 60] is ACCEPTED.

2. The Defendants' motion for summary judgment [Dkt. 50] is GRANTED.

3. This action is DISMISSED WITH PREJUDICE.

**Let Judgment be entered accordingly.**

Date: August 11, 2023

                                         *s/Katherine Menendez*
                                         Katherine Menendez
                                         United States District Judge